## THE STATE OF KANSAS v. NELS LINDGROVE.

1. PROHIBITORY LAW—*Valid Warrant.* Where an information filed, charges an offense against any of the provisions of the prohibitory law of the state, and the warrant issued in pursuance thereof commands the officer to whom it is directed to seize and take into his custody the property mentioned in the statute, such warrant, and the seizure made thereunder, are valid.

2. BILL OF PARTICULARS—*Discretion of Court.* The granting or overruling of a motion to require the state to make and file a bill of particulars with an information rests within the sound discretion of the trial court, and unless there is an abuse of such discretion shown, an appellate court will not disturb its rulings.

3. INSTRUCTIONS—*Ruling not Error.* Where the court refuses to give instructions which are not applicable to the facts that are in evidence, notwithstanding they contain correct statements of the law in the abstract, *held*, not error.

4. ——— *Constitutional Law.* Paragraphs 2522 and 2532, General Statutes of 1889, are constitutional, and not in conflict with the fourteenth amendment to the constitution of the United States.

MEMORANDUM.—Appeal from Jewell district court; CYRUS HEREN, judge. Prosecution brought by The State against Nels Lindgrove, charging him with a violation of the prohibitory liquor law. Judgment for The State. The defendant appeals. Reversed. The facts are sufficiently stated in the opinion, filed September 18, 1895.

*T. S. Kirkpatrick*, and *Ira F. Hodson*, for appellant.

*F. B. Dawes*, attorney general, and *M. R. Sutherland*, for The State.

The opinion of the court was delivered by

GILKESON, P. J. : This was a criminal prosecution brought by The State against Nels Lindgrove, under the provisions of the prohibitory law, charging the

The State v. Lindgrove.

defendant with keeping and maintaining a common nuisance. The information as originally filed, and upon which the first trial was had, contained two counts, and two verdicts were rendered therein, viz. : "Not guilty as to the first count, and guilty as to the second count." The warrant issued in this action contained what is commonly called the "search and seizure clause," and certain articles were by the sheriff taken into his possession, and held subject to the order of the court. The verdict of guilty was set aside and a new trial awarded upon the second count in said information. The case was again tried by the court and jury, November 13, 1894, and the defendant was found guilty and adjudged to pay a fine of $150 and costs of suit, and was ordered to stand committed to the county jail until such fine and costs were paid. The defendant insists that in the proceedings in the trial there were errors as follows : (1) That the seizure made in this action is not authorized by the section of the statutes under which he was convicted. (2) That the court erred in overruling the defendant's motion for a return of the barrels and bottles seized. (3) That the court erred in overruling the defendant's motion to require the state to make and file a bill of particulars with its information. (4) That the court erred in permitting the introduction as evidence the contents of the bottles seized, and permitting the jury to taste or smell thereof. (5) That the court erred in refusing certain instructions. (6) That the court erred in overruling defendant's motion in arrest of judgment. We will consider the assignments of error in the order presented.

I. The defendant contends that the seizure in this case is not authorized by ¶ 2533, General Statutes of 1889, but admits that ¶ 2543 authorizes such seizure.

The distinction sought to be made is that this defendant having been charged with maintaining a nuisance, as he claims under said ¶ 2533 — that being the only section of the law relating thereto — a search and seizure can only be made in compliance with that section, which, he contends, is after judgment by a court of competent jurisdiction, finding such a place to be a nuisance. This contention arises, we think, from a misconception of the statutes. The information in this case charges an offense against the provisions of the prohibitory law, and the records show that ¶ 2543 has been fully complied with, which provides :

" If the testimony so taken discloses the fact that an offense has been committed against any of the provisions of this act, . . . thereupon a warrant shall issue for the arrest of the person or persons named in such information, as in other criminial cases, and in addition thereto shall command the officer to whom it may be directed to seize and take into his custody any and all intoxicating liquors, vessels and bottles containing the same, . . . subject to the order of the court."

And further provides :

"And if upon the trial of such person he shall be convicted of violating any of the provisions of this act, the court shall order, as a part of the judgment, in addition to the penalty herein provided, that the officer having the custody thereof shall publicly destroy all such property," etc.

The search and seizure had in this case are fully authorized by law.

II. The defendant contends that the court erred in overruling his motion for the return of the property seized. This contention is wholly untenable, and we do not think that the defendant presses it

with any seriousness. The seizure in this case being valid, and the warrant directing the sheriff to hold the property seized until the further order of the court, we can see no reason, nor is there any urged by counsel, why the property should be returned until after a trial had been had, and the court, by order, makes disposition of it. The defendant, having been granted a new trial, was in the same position, when this motion was made, as when first arrested, and he cannot be heard to complain of the retention of the property, at least, until some action has been had in the proceedings under which it was seized. The granting of this motion at this time might have the effect of defeating the very end for which the seizure was made, and might deprive the state of material assistance in securing a conviction by depriving it of the only evidence within its control to show that the place charged was a place where intoxicating liquors were kept and stored.

III. The defendant contends that the court erred in overruling his motion to require the state to make and file a bill of particulars with its information. We think that some of the reasons urged by counsel bring this case within that class of cases in which the court might, in its discretion, require the prosecution to file a bill of particulars.

IV. The defendant contends that the court erred in permitting the jury to taste or smell the contents of the bottles seized in this action. In this, we think the court erred. It is well settled that a juror cannot give a verdict founded on his own private knowledge, and this rule is founded in reason and justice; for it could not be known whether the verdict was according to, or against, the evidence, as it is very possible that the private grounds of belief might not amount

to legal evidence. If such evidence were to be privately given by one juror to the rest it would want the sanction of an oath. The juror cannot be subjected to cross-examination; and if, therefore, a juror knew any facts material to the issue, he ought to be sworn as a witness. (1 Starkie, Ev., 471–478.) "The verdict of a jury must be rendered solely upon the legal and open testimony in the cause." (*Pleasant v. The State*, 13 Ark. 360.) One of the material facts to be proven in this case, and so claimed by the state, is that the defendant kept a place where persons resorted for the purpose of drinking, as a beverage, intoxicating liquors. It was incumbent, therefore, upon the state to prove by legal testimony whether the liquor or, as the state insists, "beer," so kept by the defendant was intoxicating, and this should have been proven by evidence, oral or written.

"It is true that the jury have the advantage of instruction. They may, in the discretion of the court, if convenient, and under proper custody (if by so doing they can better understand the testimony), be allowed to view the place of the alleged homicide. They may be allowed to inspect the instrument of homicide. The appearance of the different witnesses is matter for their observation. But in all such cases, the inspection or observation is not testimony, but comes in aid of the testimony. So, proof of venue is a material fact, and the omission of it is fatal, though every juror may know the offense was committed in the county in which trial is being held. It would not be contended for a moment that the jury could say from their own private knowledge that the venue was proven, without some testimony showing it. Nor could one, two, or more of the jurors be permitted to communicate to the rest their knowledge as to the venue." (*Pleasant v. The State*, supra.)

And when the court in this case permitted the jury

to taste and smell the contents of the bottles, they, for the purposes of this case, ceased to be jurors, and should have been sworn as witnesses. The testimony in this case discloses that some, only, of the jury tasted or smelled of the contents of the bottles, and those who did must have communicated the result of their research to those who did not, in order that the others might know what they did; or, if they did not, then some of the jurors must have rendered their verdict upon their own personal, private knowledge, and some without knowing anything about it. In neither event can it be said that the verdict was rendered solely upon the evidence adduced in court, and the rule that "the jury must be satisfied from the testimony, apart from their individual knowledge and belief, of the facts," absolutely fails. Had the jurors who tasted, when examined upon their *voir dire*, testified that they had drunk of the liquor kept by the defendant in his place of business, and knew its character, they would have been disqualified to sit, and the court would very properly have sustained a challenge for cause, and in all probability they would have appeared as witnesses in this case. Yet, by this very act, they were permitted, after they had been sworn and entered upon (and nearly concluded) the trial of this cause, to disqualify themselves. It would have been just as competent to have permitted the introduction of evidence in this case in the absence of part of the jury, and allow those who were present to communicate to those who were not what the testimony had been during their absence, as to permit an act of this kind. If it is proper for the jury to receive evidence by tasting and smelling the liquor, all of the jurors should have been compelled so to do, so that each juror should receive the same kind of evidence

and in the same manner; and the court should have ascertained in the first instance whether or not they were all equally expert in taste and smell, so that this evidence could operate alike on the same sense of each juror. One juror might be familiar with the use of intoxicating liquor, and know the taste and smell of any kind, and the other 11 might be wholly ignorant of the taste or smell of any kind. In that event the 11 jurors would receive their evidence of the contents of the bottle from the one wiser juror; and this in the privacy of the jury-room, in the absence of the accused and his counsel, and contrary to the constitutional guaranty that "the accused should be brought face to face with the witnesses who testify against him."

V. The defendant contends that the court erred in refusing certain instructions. The first instruction refused is:

"'Hop tea' does not come within the category of intoxicating liquors without proof of its intoxicating qualities, and the burden of the proof is on the plaintiff to show, by a preponderance of evidence, beyond all reasonable doubt, that said liquor is intoxicating."

Under ¶ 2521, being § 1 of the prohibitory law, the sale of any spirituous, malt, vinous, fermented, or other intoxicating liquors, is illegal. The charge in this case is for keeping a place where intoxicating liquors were kept for the purpose of being sold as a beverage, etc. The evidence discloses the fact that hop tea is a malt liquor.

Paragraph 2530 provides that "all liquors mentioned in ¶ 2521 shall be considered and held to be intoxicating liquors within the meaning of this act." It is, therefore, within the prohibition of the statutes, and, if the defendant denies that it is intoxicating, it

devolves upon him to remove the presumption of the
law by evidence. (*The State v. Schaefer*, 44 Kas. 90.)
The other instruction refused is:

"The jury are instructed that, under the laws of
the state of Kansas, the defendant has a right to keep
intoxicating liquors, lawfully acquired, for his own
use; and he may lawfully drink the same or give it
away, as he may see fit, provided a place is not
thereby kept where persons are permitted to resort
for the purpose of drinking intoxicating liquors."

While this may be a correct statement of the law,
there was no claim made on the part of the defendant,
nor was there any evidence offered to show, that any
of the liquors so kept by him were for private use;
and the instruction asked for is unnecessary, and cer-
tainly the refusal of it did not prejudice his rights in
the least. An instruction ought not to be given,
although it is a correct statement of law in the abstract,
which is not applicable to the facts that are in evi-
dence. (*The State v. Whitaker*, 35 Kas. 731; *City of
Kinsley v. Morse*, 40 id. 578; *Markland v. McDaniel*,
51 id. 350; *Lorie v. Adams*, 51 id. 692.)

VI. The defendant contends that the court erred in
overruling his motion in arrest of judgment; that
¶ 2522 of the prohibitory law is unconstitutional and
in contravention of § 1, article 14 of the constitution
of the United States, or what is usually termed the
"fourteenth amendment of the constitution;" that it
not only creates a monopoly in the sale of intoxicat-
ing liquors by placing it in the hands of a class, to-
wit, druggists, but a subdivision of a class by plac-
ing a property qualification upon the class. This
argument implies that the sale of intoxicating liquors
is an immunity or privilege of a citizen of the United
States. The weight of authorities is overwhelming
that no such immunity has heretofore existed as would

prevent state legislatures from regulating, and even prohibiting, the traffic in intoxicating drinks ; and no court has held that such a law was void, as violating the privileges or immunities of citizens of the state, or of the United States.    And as was said by Mr. Justice BREWER in the case of *The State v. Bradley,* 26 Fed. Rep. 289 :  "If, however, such a proposition is seriously urged, we think the right to sell intoxicating liquors, so far as such right exists, is not one of those rights growing out of citizenship of the United States."

"A state may absolutely prohibit the manufacture or sale of intoxicating liquors.   No supreme court has ever denied the power, and the supreme court of the United States, both before and after the fourteenth amendment, has often and expressly affirmed it." (*License Case,* 5 How. 504 ; *Bartemyer v. Iowa,* 18 Wall. 129 ; *Beer Co. v. Mass.,* 97 U. S. 25 ; *Foster v. Kansas,* 112 id. 201.)   That a state has the unquestioned right to prohibit the sale of intoxicating liquors cannot be denied.   It certainly then can place upon it such restrictions as the legislature, in its discretion, may deem proper.   Mr. Justice BREWER, in speaking for the court, in *Intoxicating-Liquor Cases,* 25 Kas. 761, says :

"It will not be doubted that the police power of the state is broad enough and strong enough to uphold any reasonable restrictions and limitations on the keeping, use or sale of any substance whose keeping, use or sale involves danger to the general public. The storage of powder or explosive and highly inflammable oils may be forbidden within city limits. The legislature may require railroads to fence their tracks, dangerous machinery to be everywhere inclosed, poisons to be labeled when sold. . . . By virtue of the same power, we may commit the sale of liquor to any particular class of persons which by

reason of its special training and habits it may deem peculiarly fit for such duty.''

And it is not unreasonable, therefore, to say that the placing of the sale of intoxicating liquors in the hands of registered pharmacists, who are the owners of a certain amount of stock, is a restriction within the power of the legislature to place thereon. It is certainly a safeguard to the public, and evidence of the party being in good faith engaged in the drug business, and not merely the proprietor of a medical, mechanical or scientific joint. And what could be more natural than to suppose that a druggist who has $1,000 invested in his business as a stock, which may become liable for fine and costs if he violates the law, will be more discreet in exercising such a business than one who has little or no property to risk or lose, and is, therefore, peculiarly fitted for such duty.

The second proposition that ¶ 2533 is unconstitutional because it provides for the destruction of property, irrespective of ownership, and without notice to the owner, or an opportunity to appear and defend as claimed by the appellant, is not sound. In the case at bar, there was no judgment rendered or order made for the destruction of the property seized in this case, and, from aught that the records disclose, it may have been turned back to the defendant, or still held by the sheriff, waiting the decision in this case; and we pass this proposition without further comment.

The judgment in this case will be reversed, and the case remanded for new trial in accordance with the views herein expressed.

All the Judges concurring.